## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **NICOLE KELLY-MYERS,** | |
| **Plaintiff,** | |
| **v.** | NO.  **2:16-cv-05194** |
| **MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA,** | |
| **Defendant.** | |

### ORDER

AND NOW, on this _____ day of _____, 2017, upon

consideration of Defendant's Motion for Summary Judgment and Plaintiff's response thereto, if

any, it is hereby ORDERED that the Summary Judgment Motion is granted and judgment is

entered in favor of Defendant and against Plaintiff on all claims asserted in Plaintiff's Complaint.

It is FURTHER ORDERED that the Clerk of Court shall mark this case closed for

statistical purposes.

BY THE COURT:

_____

**HON. HARVEY BARTLE, III**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| NICOLE KELLY-MYERS,<br><br>     **Plaintiff,**<br><br>   **v.**<br><br>**MERCY HEALTH SYSTEM OF**<br>**SOUTHEASTERN PENNSYLVANIA,**<br><br>     **Defendant.** | NO.  2:16-cv-05194 |

<u>**DEFENDANT MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA'S**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

   Defendant Mercy Health System of Southeastern Pennsylvania ("Defendant"), by and

through its undersigned counsel, hereby moves for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  In support of its Motion, Defendant relies upon the

accompanying Memorandum of Law in Support and exhibits thereto, the contents of which are

incorporated by reference herein as if set forth in full.

           Respectfully submitted,

           **POST & SCHELL, P.C.**

Dated:  <u>August 15, 2017</u>   By: *<u>/s/ David E. Renner</u>*
           A. James Johnston
           <u>ajohnston@postschell.com</u>
           David E. Renner
           <u>drenner@postschell.com</u>
           Four Penn Center
           1600 John F. Kennedy Blvd., 14th Floor
           Philadelphia, PA 19103
           Phone:  (215) 587-1000
           Facsimile:  (215) 587-1444

           *Counsel to Defendant*
           *Mercy Health System of*
           *Southeastern Pennsylvania*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **NICOLE KELLY-MYERS,**<br><br>               **Plaintiff,**<br><br>      **v.**<br><br>**MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA,**<br><br>           **Defendant.** | **NO.  2:16-cv-05194** |

<u>**DEFENDANT MERCY HEALTH SYSTEM OF SOUTHEASTERN PENNSYLVANIA'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**POST & SCHELL, P.C.**

**A. James Johnston**
ajohnston@postschell.com
**David E. Renner**
drenner@postschell.com
**Four Penn Center**
**1600 John F. Kennedy Blvd., 14th Floor**
**Philadelphia, PA 19103**
**Phone:  (215) 587-1000**
**Facsimile:  (215) 587-1444**

*Counsel to Defendant*
*Mercy Health System of*
*Southeastern Pennsylvania*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................... ii

I.    INTRODUCTION ........................................................................ 1

II.   FACTUAL BACKGROUND ......................................................... 2

III.  LEGAL STANDARD ................................................................. 6

IV.   ARGUMENT .............................................................................. 7

      A.   Mercy is Entitled to Summary Judgment on Plaintiff's WPCL Claim ........................................................................ 7

      B.   Mercy is Entitled to Summary Judgment on Plaintiff's FLSA/PMWA Claims ......................................................... 9

           1.   Plaintiff was an Exempt Administrative Employee. ............................... 9

                (a)   Compensated on a Salary Basis of More than $455 Per Week ...................................................... 10

                (b)   Primary Duty is Office or Non-Manual Work ......................... 10

                (c)   Exercise of Discretion and Independent Judgment ................. 11

           2.   In the Alternative, Plaintiff was an Exempt Executive Employee ........ 20

                (a)   Primary Duty of Enterprise Management ................................ 20

                (b)   Directs the Work of Two or More Employees .......................... 22

                (c)   Authority to Hire/Fire, or Whose Suggestions and Recommendations are Given Particular Weight .................. 24

V.    CONCLUSION ......................................................................... 25

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**CASES**                                                                                              **PAGE(S)**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ............................................................ 6, 7

*Awan v. Durrani*, No. 14-4562, 2015 U.S. Dist. LEXIS 86171 (E.D.N.Y. July 1,
    2015) ......................................................................................................................... 23

*Baum v. Astra Zeneca*, 372 F. App'x 246 (3d Cir. 2010) .......................................................... 9

*Beamer v. Possum Valley Mun. Auth.*, No. 06-1982, 2010 U.S. Dist. LEXIS
    28156 (M.D. Pa. Mar. 24, 2010) .......................................................................... 18

*Boyle v. County of Allegheny*, 139 F.3d 386 (3d Cir. 1988) ..................................................... 7

*Burton v. Appriss, Inc.*, No. 16-6112, 2017 U.S. App. LEXIS 4763 (6th Cir. 2017) .................. 14

*Calli v. ARC Maint., Inc.*, No. 14-5292, 2016 U.S. Dist. LEXIS 6923 (E.D. Pa.
    Jan. 21, 2016) .......................................................................................................... 8

*Childers v. Joseph*, 842 F.2d 689 (3d Cir. 1988) ..................................................................... 7

*Crayton v. Valued Servs. of Ala., LLC*, 737 F. Supp. 2d 1320 (M.D. Ala. 2010) ....................... 12

*Darosa v. Fla. Default Law Grp., P.L.*, No. 10-611, 2011 U.S. Dist. LEXIS 94871
    (M.D. Fla. Aug. 24, 2011) ..................................................................................... 13, 14

*Demos v. City of Indianapolis*, 302 F.3d 698 (7th Cir. 2002) ................................................. 19

*Diaz v. Team Oney, Inc.*, 291 F. App'x 947 (11th Cir. 2008) ................................................. 23, 24

*Gagnon v. Res. Tech., Inc.*, 19 F. App'x 745 (10th Cir. 2001) ................................................ 19

*Goldman v. RadioShack Corp.*, No. 03-0032, 2006 U.S. Dist. LEXIS 2433 (E.D.
    Pa. Jan. 23, 2006) ................................................................................................... 23

*Hudson v. Absecon Emergency Servs.*, No. 14-6419, 2016 U.S. Dist. LEXIS
    129602 (D.N.J. Sep. 22, 2016) .............................................................................. 22

*IntraComm, Inc. v. Bajaj*, 492 F.3d 285 (4th Cir. 2007) ....................................................... 25

*Levitt v. Tech. Educ. Servs.*, No. 10- 6823, 2012 U.S. Dist. LEXIS 111195 (E.D.
    Pa. Aug. 7, 2012) ................................................................................................... 9, 12

*Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326 (5th Cir. 2000) ........................ 11

*Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, No. 04-1880, 2005 U.S. Dist.
    LEXIS 45537 (W.D. Pa. Sept. 21, 2005) .............................................................. 7

*McDowell v. Cherry Hill Twp.*, No. 04-1350, 2005 U.S. Dist. LEXIS 29327
    (D.N.J. Nov. 21, 2005) ........................................................................................... 17, 25

*Norton-Johnson v. W. Ga. Cardiology Assocs., P.C.*, No. 14-00077, 2016 U.S.
    Dist. LEXIS 131522 (N.D. Ga. Feb. 3, 2016) , *adopted by*, 2016 U.S. Dist.
    LEXIS 129418 (N.D. Ga. Mar. 11, 2016) ........................................................... 15

## TABLE OF AUTHORITIES (CONTINUED)

**CASES**                                                                                    **PAGE(S)**

*O'Bryant v. City of Reading*, 197 F. App'x 134 (3d Cir. 2006) .................................................. 18

*Paul v. UPMC Health Sys.*, No. 06-1565, 2009 U.S. Dist. LEXIS 19277 (W.D.
    Pa. Mar. 10, 2009) ............................................................................................ 9, 17, 19

*Pieretti v. Dent Enters.*, No. 11-2179, 2013 U.S. Dist. LEXIS 27244 (E.D. Pa.
    Feb. 26, 2013), *aff'd*, 553 F. App'x 244 (3d Cir. 2014) .................................... 8, 9, 12, 17

*Reyes v. XPO Last Mile, Inc.*, No. 15-2972, 2016 U.S. Dist. LEXIS 99238 (E.D.
    Pa. July 28, 2016) ......................................................................................................... 8

*Roe-Midgett v. CC Servs.*, 512 F.3d 865 (7th Cir. 2008) ............................................................ 17

*Secretary of Labor v. Daylight Dairy Prods.*, 779 F.2d 784 (1st Cir. 1985) .............................. 23

*Simpson v. Prince Telecom, LLC*, No. 14-1211, 2017 U.S. Dist. LEXIS 48481 (D.
    Del. Mar. 31, 2017), *adopted by*, 2017 U.S. Dist. LEXIS 61178 (D. Del.
    Apr. 21, 2017) .............................................................................................................. 21

*Soehnle v. Hess Corp.*, 399 F. App'x 749 (3d Cir. 2010) ..................................................... 20, 21

*Ward v. Family Dollar Stores, Inc.*, 830 F. Supp. 2d 102 (W.D.N.C. 2011) .............................. 23

**STATUTES & CODES**

29 U.S.C. §§201, *et seq* ................................................................................................................ 1

29 U.S.C. §207(a)(1) ...................................................................................................................... 9

29 U.S.C. §213(a)(1) ...................................................................................................................... 9

43 Pa. Con. Stat. § 260.1, *et seq.* ................................................................................................. 1

43 P.S. §260.2a ............................................................................................................................. 7

43 P.S. §260.3 ............................................................................................................................... 7

43 P.S. §§333.101, *et seq.* ........................................................................................................... 1

29 C.F.R. §541.100(a) ................................................................................................................. 20

29 C.F.R. §541.104(a) ...................................................................................................... 20, 22, 23

29 C.F.R. §541.105 ...................................................................................................................... 20

29 C.F.R. §541.106(a) ................................................................................................................. 20

29 C.F.R. §541.200(a) ................................................................................................................. 10

29 C.F.R. §541.200(a)(2) ............................................................................................................. 11

29 C.F.R. §541.200(a)(3) ............................................................................................................. 11

29 C.F.R. §541.201(a) ................................................................................................................. 10

## TABLE OF AUTHORITIES (CONTINUED)

**STATUTES & CODES**                                                      **PAGE(S)**

29 C.F.R. §541.201(b) ............................................................................... 11

29 C.F.R. §541.202(a)-(c) ......................................................................... 10

29 C.F.R. §541.602 ..................................................................................... 9

29 C.F.R. §541.700(a) ........................................................................... 9, 18

29 C.F.R. §541.700(b) ........................................................................... 9, 18

29 C.F.R. §541.700(c) ............................................................................... 21

29 C.F.R. §541.701 ................................................................................... 22

29 C.F.R. §541.708 ................................................................................... 25

**RULES**

Fed. R. Civ. P. 56(a) ................................................................................... 6

## OTHER AUTHORITIES

Wage & Hour Div., U.S. Dep't of Labor, Field Operations Handbook 22b02(b) ....................... 23

## I.     INTRODUCTION

Plaintiff Nicole Kelly-Myers ("Plaintiff") brings this action against her former employer Mercy Health System of Southeastern Pennsylvania ("Mercy") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, and the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Con. Stat. § 260.1, *et seq.* alleging that Mercy misclassified her Office Manager position as exempt from overtime.  As set forth in detail below, no genuine issue of material fact exists that Plaintiff was misclassified under the FLSA/PMWA or that Mercy failed to pay Plaintiff any amount owed under the WPCL.  Rather, while working as Office Manager, Plaintiff was properly classified as exempt from the FLSA and PMWA's overtime requirements under the administrative or executive exemption.

Following her promotion to Office Manager of the physician practice office known as Mercy Surgical Associates at Nazareth Hospital (the "Practice") in January 2014, Plaintiff directed the day-to-day operations of the Practice.  At her deposition, Plaintiff testified that she was "ultimately responsible for how the [Practice] ran and how it flowed.  How everything . . . had to be done."  Plaintiff supervised the Medical Assistants ("MAs") in the office, managed the flow of work, created the schedule, managed the finances of the Practice, and ensured that staff was appropriately implementing policies.  Plaintiff handled these duties independently, with no on-site supervision.

During her approximately two-and-a-half years as Office Manager, Plaintiff made several recommendations regarding staff, **all** of which were implemented:  a nurse was removed from the practice after Plaintiff informed her manager that the nurse and a physician were arguing loudly with one another; a part-time MA was given full-time hours; and a "floating" MA was hired and worked at the Practice the two days a week that the physicians saw patients in the

Practice's offices.  Plaintiff also counseled one MA due to her attendance and changed that MA's schedule to better enable her to get to work due to child care responsibilities.  Truly the buck stopped with Plaintiff as the only management personnel at the Practice.

Because there is no genuine issue of material fact that Plaintiff was paid on a salary basis of not less than $455 per week, Plaintiff performed office or nonmanual work directly related to the management or general business operations of the Practice and her primary duty, that is, the day-to-day-management of the Practice, required the exercise of discretion and independent judgment with respect to matters of significance, this Court should grant summary judgment to Mercy because Plaintiff was exempt under the administrative exemption.  In the alternative, given that Plaintiff's primary duty was the management of the Practice, which required her to customarily and regularly direct the work of two or more other employees, and Plaintiff's recommendations as to the hiring, firing, and other changes of employee status were given particular weight, this Court should grant Mercy summary judgment finding that there is no genuine issue of material fact as to Plaintiff's classification as exempt under the executive exemption.

## II.    FACTUAL BACKGROUND[1]

Following Mercy's purchase of the Practice in January 2013, Plaintiff began working for Mercy as a Patient Service Representative ("PSR").  Pl.'s Dep. 26:10-27:3, 27:7-10, 37:3-7 (Ex. A); Barnaby Dep. 15:21-23 (Ex. B).  From January 2013 through July 2016, Mercy employed two general surgery physicians at the Practice – Arthur Barnaby and Charles Schafer.[2]  Barnaby Dep. 11:14, 12:7-10 (Ex. B).  Drs. Barnaby and Schafer saw patients in the office of the Practice

---

[1] The facts set forth herein are in the light most favorable to Plaintiff and taking Plaintiff's deposition testimony regarding matters for which she has personal knowledge as true.  Mercy reserves the right to challenge any of the facts set forth herein should any portion of this case survive past summary judgment.
[2] Mercy hired another surgeon to work in the Practice in July 2016 (Abhiman Cheeyandira).  Pl.'s Dep. 122:17-24 (Ex. A).

two (2) days per week:  Tuesdays and Wednesdays.  Pl.'s Dep. 97:15-17 (Ex. A).

As a PSR, Plaintiff was considered nonexempt from overtime and paid $18 per hour.  *Id.* at 50:12-22, 66:21-23.  During the time that Plaintiff worked as a PSR, she reported to Office Manager Lisa Brackett,[3] who served as the Practice's Office Manager from January 2013 until January 20, 2014.  *Id.* at 52:7-24; Ex. 2 to Pl.'s Dep (Ex. D).  Plaintiff was promoted to the Office Manager position on January 20, 2014.[4]  *Id.*  At the time she was promoted to Office Manager of the Practice, Plaintiff was paid an initial annual salary of $41,870 (which was increased in 2015 and 2016)[5] and was classified as exempt from the overtime requirements of the FLSA/PMWA.  Ex. 2 to Pl.'s Dep. (Ex. D); Mercy's Payment Detail Listing for Pl., MHS 49-73 (Ex. F).  Plaintiff's promotion resulted in a pay increase of several thousand dollars.  Pl.'s Dep. 66:24-67:3 (Ex. A).  Plaintiff also received a bonus of $4,000 when she was promoted to Office Manager, paid in two installments.  *Id.* at 67:4-11.  At the time of her promotion, Plaintiff was provided with her own office at the Practice.  *Id.* at 135:7-8.  Following her promotion, Plaintiff began reporting to Phyllis Hilker, Mercy's Regional Director of Practice Operations.  *Id.* at 61:24-62:2; Hilker Dep. 20:4-7 (Ex. G).

As the Office Manager, Plaintiff was responsible for the day-to-day operations of the Practice, and "everything [fell] on [her]."  Pl.'s Dep. 82:8-12, 83:18-21, 233:5-14 (Ex. A).  At the time of her promotion to Office Manager, in addition to the two physicians, the Practice was staffed with an Office Manager (Plaintiff), and two MAs (Jennifer Frumento and Barry Dixon),

---

[3] At all times, Ms. Brackett held the title of Office Manager II.  Bracket Dep. 184:2-186:6 (Ex. C).

[4] Plaintiff was promoted to the title of Office Manager I, and was responsible for managing one physician practice (*i.e.*, the Practice).  Brackett Dep. 184:2-186:6 (Ex. C).  At that point, Ms. Brackett had no more continuing responsibilities for the Practice.  Pl.'s Dep. 82:13-84:2 (Ex. A); Brackett Dep. 105:17-20 (Ex. C).  Ms. Brackett was then responsible for managing three other physician practices.  Brackett Dep. 20:19-21:14 (Ex. C); Moyer Dep. 21:12-22 (Ex. E).  Office Manager IIs manage multiple practices, while Office Manager Is manage a single practice.  Brackett Dep. 20:19-21:14, 184:2-186:6 (Ex. C); Moyer Dep. 21:12-22 (Ex. E).

[5] Plaintiff received a salary increase in July 2015 to $43,118 per year.  *See* Mercy's Payment Detail Listing for Pl., MHS 49-73 (Ex. F).  Plaintiff received another salary increase in July 2016 to $44,408 per year.  *See id.*

whom Plaintiff supervised.  *Id.* at 67:22-68:11, 70:22-71:7, 74:9-18.  In June 2014, following a discussion among Plaintiff, Ms. Brackett, and Vicki Gress (another Mercy Office Manager), the three requested a "floating" MA be hired to rotate among the three Office Managers' physician practices.  *Id.* at 45:17-50:9.  Following this request, Jackie Pzrepioski was hired as the "floating" MA and assigned to work in the Practice two days a week (Tuesdays and Wednesdays) per Plaintiff's request.  *Id.*; Pzrepioski Dep. 18:17-20 (Ex. H).

In November 2014, Ms. Frumento (who was working as a part-time MA in the Practice) asked Plaintiff if it was possible for her to transition from part-time to full-time.  Pl.'s Dep. 72:10-74:8 (Ex. A); Frumento Dep. 26:11-14, 29:3-34:11 (Ex. I); Hilker Dep. 127:20-131:11 (Ex. G).  Following this request, Plaintiff reached out to Ms. Hilker to discuss whether it was possible for Ms. Frumento to become full time.  *Id.*  During that discussion, Plaintiff informed Ms. Hilker that Plaintiff believed that the Practice needed another full-time MA.  *Id.*  As a result of this conversation, Ms. Hilker approved Ms. Frumento becoming full-time.  *Id.*

While employed as the Office Manager, Plaintiff oversaw all administrative and management operations of the Practice.  *See, e.g.*, Pl.'s Dep. 147:16-20 (Ex. A); Frumento Decl. ¶ 11 (Ex. J); Frumento Dep. 149:7-21 (Ex. I); Dixon Decl.¶ 10 (Ex. K).  As the public face of the Practice, Plaintiff was "ultimately responsible for how the [Practice] ran and how it flowed. How everything . . . had to be done."  Pl.'s Dep. 120:8, 147:16-20 (Ex. A); Frumento Decl. ¶ 10 (Ex. J); Dixon Decl. ¶ 9 (Ex. K).  As outlined in her job description, Ex. 10 to Pl.'s Dep. (Ex. L), this entailed:

> administrative and technical work at the supervisory level, responsible for overseeing day-to-day operations of [the] Practice . . . .  Accountable for ensuring that the scheduling, patient registration/reception, clinical care, and patient check-out/discharge processes are completed in a professional manner in accordance with established protocol.  Responsibility for practice operations, including employee scheduling and development, Information Systems, physician scheduling, maintenance of medical

4

records and files, and quality management are significant aspects of the work.  This
position is also responsible for office billing and collections, purchasing supplies, and
managing expenses.

Pl.'s Dep. 224:12-16 (Ex. A) (testifying that the job description accurately reflected the duties

Plaintiff performed as an Office Manager).  As the Office Manager, Plaintiff was primarily

responsible for the following essential duties:

- Monitors staff performance.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 227:4-7 (Ex. A).

- Ensures colleagues[6] follow policies, procedures and necessary precautions for clinical
  testing, medication management.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 229:8-13 (Ex.
  A).

- Employee Scheduling – ensures appropriate staff scheduling and that procedures are in
  place to notify manager when colleagues are unable to arrive for their work schedule or
  request time-off.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 141:23-144:11, 230:5-12 (Ex.
  A).

- Staff development – ensures that all colleagues meet required certifications for their
  respective roles and participate in any training updates.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s
  Dep. 230:13-18 (Ex. A).

- Ensures colleagues understand policies and procedures for scheduling of patient
  appointments.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 225:8-16 (Ex. A).

- Ensures that policy and procedure are effectively communicated and implemented in a
  timely fashion within the Practice.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 225:17-23
  (Ex. A).

- Ensures colleagues' interactions with patients reflect Standards of Behavior.  Ex. 10 to
  Pl.'s Dep. (Ex. L); Pl.'s Dep. 225:24-226:5 (Ex. A).

- Ensures colleagues utilize Practice Management System ("EPM") appropriately and
  completely to schedule patients.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 226:6-12 (Ex.
  A).

- Ensures all colleagues receive patients in alignment with standards of behavior, check
  patients for identification, intake the patient in alignment with current policy and
  procedure.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 227:21-228:5 (Ex. A).

- Ensures colleagues understand and implement protocol for clinical intake of patients
  (room prep., escort patient to room, vital signs, *etc.*).  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s
  Dep. 228:19-229:1 (Ex. A).

---

[6] Mercy refers to employees as "colleagues."  Pl.'s Dep. 225:12-13 (Ex. A).

- Ensures colleagues enter patient information appropriately into EPM.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 229:2-7 (Ex. A).

- Billing and Collections – Ensures all data required for billing are collected, and assists colleagues as necessary to resolve data collection difficulties.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 231:6-17 (Ex. A).

- Reviews daily bank deposit and ensures it reconciles to day sheet for collections.  Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 232:2-6 (Ex. A).

In her role as Office Manager, Plaintiff also served on the Surgical Patient Committee, which was tasked with making recommendations on process improvements and patient care.  Pl.'s Dep. 86:21-92:18 (Ex. A).

Plaintiff held the position of Office Manager until she was terminated in September 2016 after it was discovered that Plaintiff "took without authorization a physician's prescription form, falsified a prescription for a controlled substance using a former employee's name, and attempted to obtain this controlled substance from a pharmacy.  *Id.* at 306:7-307:8; Pl.'s Termination Letter, P1 (Ex. M).  In addition, [Plaintiff] violated this former employee's HIPAA rights by accessing and reading protected health information in her medical record."  *Id.* Plaintiff was charged criminally for her unlawful conduct and Plaintiff pled no contest to at least one of those criminal charges.  Pl.'s Am. Resp. to First Req. for Admis. (Ex. N).  Plaintiff has not challenged Mercy's decision to terminate her employment.  Pl.'s Dep. 299:24-300:7 (Ex. A).

## III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To the

contrary, the Third Circuit has cautioned that issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).

It is well-settled that in determining whether an issue of material fact exists, a court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1988). *Anderson* cautions, however, that summary judgment is appropriate if the non-moving party provides merely "colorable, conclusory or speculative" evidence. *Anderson*, 477 U.S. at 249. When measured against these standards, none of Plaintiff's claims can survive summary judgment.

## IV.   ARGUMENT

### A.   Mercy is Entitled to Summary Judgment on Plaintiff's WPCL Claim.

The WPCL is a contract-based statute, which provides, in relevant part, that "[a]ll wages, . . . , earned in any pay period shall be due and payable . . . *as provided in a written contract of employment*." 43 P.S. § 260.3 (emphasis added). The statute defines "wages" as "'any other amount' *pursuant to an employment contract*." *Id.* at § 260.2a. (emphasis added). Plaintiff fundamentally misinterprets the WPCL by seeking overtime wages not provided for in any agreement with Mercy. Pl.'s Compl. ¶ 43 ("Defendant failed to compensate Plaintiff for all wages owed during her employment."). Rather, Plaintiff explicitly admits that she had no agreement with Mercy to be paid overtime (because Mercy classified her as exempt from overtime). Pl.'s Dep. 57:6-16 (Ex. A).

The purpose of the WPCL "is to allow employees to recover wages and other benefits that have already been earned and are due from employers pursuant to existing agreements between the parties." *Mavrinac v. Emergency Med. Ass'n of Pittsburgh*, No. 04-1880, 2005 U.S. Dist. LEXIS 45537, at *22 (W.D. Pa. Sept. 21, 2005). The WPCL "does not create an

independent, substantive right to compensation," but it instead "serves as an enforcement mechanism for employees whose employers have breached a contractual obligation to pay them wages." *Pieretti v. Dent Enters.*, No. 11-2179, 2013 U.S. Dist. LEXIS 27244, at *9-10 (E.D. Pa. Feb. 26, 2013) (Bartle, J.), *aff'd*, 553 F. App'x 244 (3d Cir. 2014).

When Plaintiff was promoted to Office Manager, Mercy provided Plaintiff with an offer letter agreeing to pay Plaintiff a salary of $41,870 per year. Ex. 2 to Pl.'s Dep. (Ex. D). Plaintiff knew that this salary was intended to compensate her for all hours she worked. Pl.'s Dep. 56:23-57:2 (Ex. A). At her deposition, Plaintiff testified that there was no separate agreement or understanding that she would be paid overtime in addition to her base salary.[7] *Id.* at 57:6-16. Because the record clearly shows that Plaintiff was paid all amounts that Mercy agreed to pay her pursuant to any contract, and Plaintiff has expressly denied that there was any agreement that Mercy pay her overtime in addition to her salary, her WPCL claim fails. *Id.* at 31:22-32:8; *Pieretti*, 2013 U.S. Dist. LEXIS 27244, at *9-10 (granting summary judgment to employer on WPCL claim where plaintiff "produced no evidence of any contractual obligation on the part of [his employer] to pay him overtime wages."); *see also, e.g.*, *Reyes v. XPO Last Mile, Inc.*, No. 15-2972, 2016 U.S. Dist. LEXIS 99238, at *7 (E.D. Pa. July 28, 2016) (collecting cases and dismissing plaintiffs' WPCL finding there was "no contractual obligation . . . for wages between" plaintiffs and their employer); *Calli v. ARC Maint., Inc.*, No. 14-5292, 2016 U.S. Dist. LEXIS 6923, at *22-24 (E.D. Pa. Jan. 21, 2016) (granting summary judgment to employer on WPCL claim, reasoning that the plaintiff's "reliance on the [FLSA/PWMA] to support a contractual obligation for overtime wages is unpersuasive. Further, the . . . agreement makes no mention of overtime wages and therefore does not evidence a contractual agreement to pay

---

[7] Mercy also promised that it would pay Plaintiff a one-time bonus of $4,000, in two installments, which Plaintiff agrees she was paid. Pl.'s Dep. 674:11 (Ex. A); Ex. 2 to Pl.'s Dep. (Ex. D).

overtime wages.").  Accordingly, Mercy is entitled to summary judgment as to Plaintiff's WPCL

claim (Count III).

**B.      Mercy is Entitled to Summary Judgment on Plaintiff's FLSA/PMWA[8] Claims.**

The FLSA provides that covered, non-exempt employees must receive overtime pay for

all hours worked over forty (40) hours in a workweek.  *See* 29 U.S.C. § 207(a)(1).  Exemptions

to the overtime requirement are provided for any employee employed in a bona fide executive,

administrative or professional capacity, among others.  *See* 29 U.S.C. § 213(a)(1).

**1.      Plaintiff was an Exempt Administrative Employee.**

The FLSA's regulations define, in relevant part, an "employee employed in a bona fide

administrative capacity" as any employee:

(1)      Compensated on a salary . . . basis[9] at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2)      Whose primary duty[10] is the performance of office or nonmanual work directly related to the management or general business operations[11] of the employer or the

---

[8] "The courts have held that [the PMWA is] to be interpreted in the same fashion as the FLSA inasmuch as the state and federal acts have 'identity of purpose' and 'the state statute substantially parallels the federal.'"  *Levitt v. Tech. Educ. Servs.*, No. 10- 6823, 2012 U.S. Dist. LEXIS 111195, at *8 (E.D. Pa. Aug. 7, 2012) (stating that the court's analysis of the plaintiff's job duties under the FLSA, "applies with equal force to the claims asserted under the [PMWA].");  *see also Pieretti*, 2013 U.S. Dist. LEXIS 27244, at *7 ("the PMWA administrative exemption parallels the administrative exemption of the [FLSA]." (citing *Baum v. Astra Zeneca*, 372 F. App'x 246, 248, n.4 (3d Cir. 2010)));  *Paul v. UPMC Health Sys.*, No. 06-1565, 2009 U.S. Dist. LEXIS 19277, 2009, at *21 n.2 (W.D. Pa. Mar. 10, 2009) (stating that "[t]he exemptions under both the FLSA and PMWA are identical").

[9] "An employee will be considered to be paid on a 'salary basis' within the meaning of these regulations if the employee regularly receives each pay period, on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602.

[10] "The term 'primary duty' means the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole.  Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee."  29 C.F.R. § 541.700(a), (b).  "Time alone, however, is not the sole test of determining whether exempt work is the primary duty of an employee.  Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such conclusion."  29 C.F.R. § 541.700(b).

[11] "The phrase 'directly related to the management or general business operations' refers to the type of work performed by the employee.  To meet this requirement, an employee must perform work directly related to

9

employer's customers; and

(3)     Whose primary duty includes the exercise of discretion and independent judgment[12] with respect to matters of significance.

29 C.F.R. § 541.200(a).  On the undisputed material facts of record, it is apparent that Plaintiff

meets the elements of an exempt administrative employee.

**(a)     Compensated on a Salary Basis of More than $455 Per Week.**

From January 20, 2014 until her termination, Plaintiff was compensated on a salary basis

ranging from $805 to $854 per week, exceeding the statutory minimum rate of $455 per week.

Pl.'s Dep. 56:23-75:2, 31:22-32:8 (Ex. A); Ex. 2 to Pl.'s Dep. (Ex. D); Mercy's Payment Detail

Listing for Pl., MHS 49-73 (Ex. F).

**(b)     Primary Duty is Office or Non-Manual Work.**

Given the undisputed facts set forth above, Plaintiff does not and cannot dispute that as

the Office Manager of the Practice she performed "office or nonmanual work directly related to

---

assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a).

[12] "In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.  The term 'matters of significance' refers to the level of importance or consequence of the work performed.  The phrase 'discretion and independent judgment' must be applied in the light of all the facts involved in the particular employment situation in which the question arises.  Factors to consider when determining whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to:  whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.  The exercise of discretion and independent judgment implies that the employee has authority to make an independent choice, free from immediate direction or supervision.  However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.  Thus, the term 'discretion and independent judgment' does not require that the decisions made by an employee have a finality that goes with unlimited authority and a complete absence of review.  The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action."  29 C.F.R. § 541.202(a)-(c).

the management or general business operations" of Mercy.  29 C.F.R. § 541.200(a)(2).[13]

### (c)      Exercise of Discretion and Independent Judgment.

Plaintiff customarily and regularly exercised discretion and judgment with respect to matters of significance in her management of the Practice.  Pl.'s Dep. 82:8-12 (Ex. A); 29 C.F.R. § 541.200(a)(3).  Plaintiff independently managed and directed the Practice's operations and functions, as the only member of management physically present at the Practice.  Pl.'s Dep. 82:8-12 (Ex. A); Hilker Dep. 156:24-158:13 (Ex. G); Dixon Decl. ¶ 12 (Ex. K); Dixon Dep. 168:16-167:17 (Ex. O); Frumento Decl. ¶ 13 (Ex. J); Frumento Dep. 153:16-154:5 (Ex. I).  Plaintiff was "ultimately responsible for how the [Practice] ran and how it flowed.  How everything . . . had to be done."  Pl.'s Dep. 147:16-20 (Ex. A).  Plaintiff performed all of her duties as Office Manager with little or no daily direct supervision and was given autonomy to manage the Practice, including delegating tasks to her staff as she saw fit.  Pl.'s Dep. 215:14-17 (Ex. A); Hilker Dep. 119:3-10, 156:24-158:13, 167:16-24, 169:3-21, 170:17-171:12 (Ex. G); Brackett Dep. 187:15-188:1, 194:18-195:12 (Ex. C).  Plaintiff "had to figure [the management of the Practice] out on [her] own."  Pl.'s Dep. 148:10-11 (Ex. A).  Generally Plaintiff's decisions as the Practice's Office Manager were not scrutinized by anyone at Mercy.  Hilker Dep. 156:24-158:13 (Ex. G).  *Lott v. Howard Wilson Chrysler-Plymouth, Inc.*, 203 F.3d 326, 332 (5th Cir. 2000) (affirming grant of summary judgment and holding that supervisory duties including "coordination of the work of other employees within the office, the discipline of employees,

---

[13] The Department of Labor ("DOL") provides examples of work directly related to the management or general business operations, including but not limited to, work in functional areas such as:  tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations; government relations; computer network, Internet and database administration; legal and regulatory compliance; and similar activities.  29 C.F.R. § 541.201(b).  Plaintiff's primary responsibility was to manage the Practice, its employees, and to administer the overall business operations of the Practice, including but not limited to, work in finance, quality control, purchasing, personnel management, human resources, employee benefits, public relations. *See* Ex. 10 to Pl.'s Dep. (Ex. L); Pl.'s Dep. 141:23-144:11, 224:5-234:2 (Ex. A); 29 C.F.R. § 541.201(b).

evaluation of employees' job performance, . . . making recommendations . . . regarding the hiring

of new employees and discharge of present employees, as well as supervising the orientation and

training of new office employees require the exercise of discretion and independent judgment");

*Crayton v. Valued Servs. of Ala., LLC*, 737 F. Supp. 2d 1320, 1340 (M.D. Ala. 2010) (granting

summary judgment to employer as to administrative exemption where plaintiff was responsible

for employee training, discipline, and "she generally managed the day-to-day operations of her

store, including making schedules and observing and providing guidance to her associates in the

discharge of their duties").

Plaintiff set her own hours.  Pl.'s Dep. 85:18-23, 277:15-278:23 (Ex. A).  *See Pieretti*,

2013 U.S. Dist. LEXIS 27244, at *4-9 (granting summary judgment finding employee exempt

under administrative exemption where, *inter alia*, employee set his own schedule and determined

how he would be spending his time on any given work day); *Levitt*, 2012 U.S. Dist. LEXIS

111195, at *22 (same).  Plaintiff managed all employee and staffing issues that arose in the

Practice, including interpersonal issues between/among employees, disciplinary issues, work

hours, employee scheduling, staff questions regarding payroll and time records, and submission

of her subordinates' time records and FMLA leave time.  Pl.'s Dep. 93:5-94:20, 99:6-20, 100:2-7

(Ex. A).  Plaintiff approved vacation and time off requests for her staff and was the only person

at the Practice who could do so.  *Id.*; Bracket Dep. 130:18-132:3 (Ex. C); Frumento Decl. ¶ 19

(Ex. J); Frumento Dep. 56:1-57:1 (Ex. I); Dixon Decl. ¶ 19 (Ex. K); Dixon Dep. 200:20-203:24

(Ex. O).  If Mr. Dixon or Ms. Frumento was going to be late for work, or needed to leave early,

they were required to notify Plaintiff so she could ensure proper staffing and coverage.  Pl.'s

Dep. 94:21-24, 96:24-97:3 (Ex. A); Frumento Dep. 70:13-19, 158:4-12 (Ex. I); Frumento

Decl.¶ 20 (Ex. J); Dixon Decl. ¶ 20 (Ex. K).[14]

Plaintiff was the only person at the Practice responsible for employee discipline and counseling.  Pl.'s Dep. 105:15-107:11 (Ex. A); Pries Dep. 195:23-196:13 (Ex. P).[15]  In fact, Plaintiff verbally counseled Ms. Frumento for lateness.  Pl.'s Dep. 107:24-108:2, 110:13-112:17 (Ex. A); Frumento Decl. ¶ 21 (Ex. J); Frumento Dep. 74:19-79:4 (Ex. I).  She called Ms. Frumento into her office and told her that she was being counseled pursuant to Mercy's attendance policy and if she continued to fail to arrive on time, there would be disciplinary consequences.  *Id.*  During this conversation, Ms. Frumento told Plaintiff she was repeatedly late for work because her start time conflicted with her ability to get her children to school.  *Id.* Following the conversation, Plaintiff adjusted Ms. Frumento's schedule to accommodate her child care issues, which resolved Plaintiff's concerns regarding Ms. Frumento's attendance.  *Id.*

Mercy charged Plaintiff with monitoring the work and performance of her subordinates – Mr. Dixon and Ms. Frumento.  Pl.'s Dep. 117:20-119:4 (Ex. A).  Plaintiff often gave both employees positive feedback regarding their jobs as well as constructive criticism on how to improve their performance.  *Id.*  Plaintiff also was responsible for determining when or whether the Practice's employees required additional training.  *Id.* at 142:13-16.  In this vein, if Plaintiff observed any knowledge deficiencies in any of her employees, Plaintiff had the authority to send her employees to specific training courses.  *Id.* at 142:13-144:19.  *See Darosa v. Fla. Default*

---

[14] From time to time, Plaintiff was asked if she could spare staff to send to other Mercy physicians' practices.  It was entirely up to Plaintiff whether she could send a staff member to assist another practice and if Plaintiff rejected the request, nobody "overruled" that decision.  Pl.'s Dep. 97:4-98:9 (Ex. A); Brackett Dep. 105:22-107:1 (Ex. C).

[15] Plaintiff testified that she had authority to verbally counsel employees, but did not know whether she could issue her employees written discipline.  Pl.'s Dep. 105:15-22 (Ex. A).  Plaintiff testified that had she needed to go beyond the verbal counseling phase of discipline, she would have reached out to Human Resources for guidance.  *Id.* at 105:22-107:11.  Kathleen Pries – Mercy's Director of Human Resources for Nazareth Hospital – testified that Plaintiff had the authority to issue formal discipline to her staff without approval from anyone at Mercy.  Pries Dep. 195:23-196:13 (Ex. P).  Because Plaintiff's verbal counselling of her employees was sufficient to address any behavioral or attendance issues that arose while she managed the Practice, she never had any reason to provide written discipline.  Pl.'s Dep. 105:22-107:11 (Ex. A).

*Law Grp., P.L.*, No. 10-611, 2011 U.S. Dist. LEXIS 94871, at *25-26 (M.D. Fla. Aug. 24, 2011) (granting summary judgment as to administrative exemption where "the undisputed facts show[ed] that Darosa performed numerous management functions . . . she managed and delegated workflow, monitored performance, disciplined employees (and/or referred them for discipline), trained employees, . . . and made hiring recommendations.").

Plaintiff was the public face of the Practice and responsible for receiving and handling patient complaints.  Pl.'s Dep. 100:19-105:14, 120:8, 154:24-155:4 (Ex. A); Brackett Dep. 144:14-22, 184:12-13 (Ex. C).  If a patient asked to speak with a manager, the Practice's MAs would have directed that patient to Plaintiff.  Frumento Decl. ¶ 16 (Ex. J); Frumento Dep. 112:1-114:18 (Ex. I); Dixon Decl. ¶ 15 (Ex. K); Dixon Dep. 191:16-193:18 (Ex. O).  Mercy allowed Plaintiff complete autonomy to handle patient complaints at the Practice, including whether to handle a complaint herself, allow her staff to do so or escalate to someone more senior at Mercy. Pl.'s Dep. 100:19-105:14, 154:24-155:4 (Ex. A).  *See Burton v. Appriss, Inc.*, No. 16-6112, 2017 U.S. App. LEXIS 4763, at *13 (6th Cir. 2017) (affirming summary judgment to employer finding account manager was exempt under the administrative exemption where employee was found to be, *inter alia*, "the public face of [her] employer").

Plaintiff attended monthly Office Manager meetings which included other Office Managers in the Health System and participated in periodic conference calls with other Mercy Office Managers.  Pl.'s Dep. 144:23-147:7, 170:11-13, 173:6-175:11 (Ex. A).  Following these meetings/calls, Plaintiff discussed with Mr. Dixon and Ms. Frumento the subject matter of these meetings/calls, such as new policies and procedures Mercy was implementing and/or considering implementing, statistics regarding patient wait times, and other areas of improvement for the Practice.  *Id.*; Hilker Dep. 155:9-14 (Ex. G); Frumento Decl. ¶ 24 (Ex. J); Frumento Dep.

14

163:15-164:7 (Ex. I); Dixon Decl. ¶ 23 (Ex. K); Dixon Dep. 85:1-86:6 (Ex. O).  In fact, each time Mercy rolled out a new policy or procedure, or made a change to an existing policy or procedure during Plaintiff's tenure as Office Manager, Plaintiff reviewed the changes to (or the new) policy or procedure with her staff.  *Id.*  Based on information discussed at Office Manager meetings, Plaintiff coached her staff to improve their customer satisfaction ratings.  *Id.*  In fact, following a visit to the Practice from James Santoro, Mercy's Executive Director, Mr. Santoro charged Plaintiff with analyzing the Practice's customer satisfaction ratings to identify and develop methods to improve ratings, increase patient responses, and improve patient access to Mercy's satisfaction survey.  Pl.'s Dep. 164:24-172:24 (Ex. A); Ex. 8 to Pl.'s Dep. (Ex. Q).  *See Norton-Johnson v. W. Ga. Cardiology Assocs., P.C.*, No. 14-00077, 2016 U.S. Dist. LEXIS 131522, at \*69 (N.D. Ga. Feb. 3, 2016) (recommending summary judgment be granted finding office manager exempt under administrative exemption of FLSA because, *inter alia*, the plaintiff "regularly disseminated information to employees in the billing department that she received from management at the periodic meetings with WGC's senior leadership team and in written materials and handouts."), *adopted by*, 2016 U.S. Dist. LEXIS 129418 (N.D. Ga. Mar. 11, 2016).

Plaintiff handled all of the monetary transactions and the finances of the Practice exclusively, including collection, daily deposits, and reconciliation.  Pl.'s Dep. 204:20-211:22 (Ex. A); Frumento Decl. ¶ 26 (Ex. J); Dixon Dep. 75:10-77:10 (Ex. O).  No other employee of the Practice was permitted to manage the financial transactions of the Practice (other than when Plaintiff was on vacation or out of the office, when she temporarily assigned this responsibility to Ms. Frumento).  *Id.*

Plaintiff's recommendations regarding the Practice such as personnel (*e.g.*, hiring and firing employees) and financial matters (*e.g.*, large purchases and capital requests), were given

significant weight by her supervisor.  For example, while she could not unilaterally hire or fire an employee (and, in fact, no Mercy employee has that authority), Plaintiff had authority to recommend that employees be hired or fired.  Pl.'s Dep. 116:6-21 (Ex. A); Hilker Dep. 90:3-20, 104:19-105:1 (Ex. G).  Plaintiff was instrumental in transitioning Ms. Frumento from a part-time to full-time employee at the Practice, after Plaintiff recommended this course of action to her manager Ms. Hilker.  Pl.'s Dep. 72:10-74:8 (Ex. A); Frumento Dep. 26:11-14, 29:3-34:11 (Ex. I); Hilker Dep. 127:20-131:11 (Ex. G).  Plaintiff also, along with Ms. Brackett and Ms. Gress, participated in hiring a "floating" MA – Ms. Pzrepioski.  Pl.'s Dep. 45:17-50:9 (Ex. A).  Per Plaintiff's request, Ms. Pzrepioski worked at the Practice every Tuesday and Wednesday.  *Id.* at 49:4-50:11; Pzrepioski Dep. 13:17-20 (Ex. H).  Furthermore, during Plaintiff's tenure as Office Manager, a nurse named Kelly Freer worked one day a week in the Practice.  Pl.'s Dep. 77:24-78:15 (Ex. A); Hilker Dep. 105:8-21 (Ex. G).  Sometime in 2015, Plaintiff overheard an argument between Ms. Freer and Dr. Schafer where the two were "fighting over money."  Pl.'s Dep. 80:2-6 (Ex. A).  Plaintiff confronted Dr. Schafer over the inappropriateness of this verbal altercation in the workplace.  *Id.* at 80:18-81:4.  Plaintiff then spoke with Ms. Hilker regarding this altercation, told her she believed Ms. Freer's action were "unprofessional and disturbing," and recommended to Ms. Hilker that Ms. Freer be removed from working in the Practice.  *Id.* at 81:5-24; Hilker Dep. 127:20-128:6 (Ex. G); Dixon Dep. 133:21-134:13 (Ex. O); Dixon Decl. ¶ 27 (Ex. K).  Based on Plaintiff's recommendation, Ms. Hilker removed Ms. Freer from the Practice.  *Id.*; Brackett Dep. 118:19-120:4 (Ex. C).

Plaintiff's recommendation during her tenure as Office Manager that the Practice needed four new exam room beds, which are considered very "expensive," also was approved by Mercy.  Pl.'s Dep. 211:1-213:11 (Ex. A).  In addition, Plaintiff served on the Surgical Patient Committee,

which was tasked with making recommendations on process improvements and patient care.  *Id.*
at 86:21-92:18.

Accordingly, due to the significant discretion Plaintiff possessed in managing the Practice
and the fact that her recommendations regarding hiring, firing and employee status were given
particular weight by Mercy, there is no genuine issue of material fact that Plaintiff's position as
Office Manager meets the requirements of the administrative exemption.  *See Pieretti*, 2013 U.S.
Dist. LEXIS 27244, at *2-3 (granting summary judgment and finding employee had discretion
and independent judgment where employee could, *inter alia*, discipline and recommend to
management that an employee be reprimanded or terminated); *Paul*, 2009 U.S. Dist. LEXIS
19277, at *32-34 (granting summary judgment to employer holding that "[h]er decisions not
being final and having to be reviewed by superiors or others in the [corporate] office do not
render her without discretion or independent judgment."); *McDowell v. Cherry Hill Twp.*, No.
04-1350, 2005 U.S. Dist. LEXIS 29327, at *32-35 (D.N.J. Nov. 21, 2005) (granting summary
judgment holding that employee was exempt under administrative exemption because he had
discretion to suggest disciplinary actions and equipment purchases and to participate in other
personnel matters "even though he might not have the ultimate say in these matters"); *see also
Roe-Midgett v. CC Servs.*, 512 F.3d 865, 874 (7th Cir. 2008) ("[D]ecisions made as a result of
the exercise of discretion and independent judgment may consist of recommendations for action
rather than the actual taking of action.").  At the end of the day, there is no question that Plaintiff
had authority to make independent choices, free from immediate direction or supervision, in the
day-to-day management of the Practice.  She was, therefore, an exempt administrative employee.

Mercy anticipates that Plaintiff will attempt to argue that because, according to her
testimony, she spent a significant portion of her time handling clerical tasks, that she was not

exempt.  Plaintiff's argument misses the mark because an employee's "primary duty" is the "principal, main, major or most important duty that the employee performs . . . based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a); *see also* 29 C.F.R. § 541.700(b) ("Time alone, however, is not the sole test, and nothing in this section requires that exempt employees spend more than 50 percent of their time performing exempt work.  Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion").  As Plaintiff herself testified she was "ultimately responsible for how the [Practice] ran and how it flowed.  How everything . . . had to be done."  Pl.'s Dep. 120:8, 147:16-20 (Ex. A).  The day-to-day management of the Practice fell entirely on Plaintiff's shoulders.  *Id.* at 82:8-12.  As her supervisor, Ms. Hilker, testified, the most important duty Plaintiff had as an Office Manager was running "the day-to-day operations of the [Practice].  That's number one.  That's the first thing I expect of an [O]ffice [M]anager.  They are to handle the day-to-day stuff."  Hilker Dep. 167:16-24 (Ex. G).  Therefore, taking all of Plaintiff's testimony as true, her primary duty was Practice management, and not "clerical work" she claims to have spent more than 50 percent of her time performing.  *See* Pl.'s Dep. 82:8-12, 83:18-21, 70:22-71:7, 74:9-18, 85:18-86:20, 147:16-20 (Ex. A); *O'Bryant v. City of Reading*, 197 F. App'x 134, 138 (3d Cir. 2006) (affirming summary judgment to employer on administrative exemption holding, "notwithstanding the time [plaintiff] might have spent on clerical activities, her primary duties were directly related, and significant, to the general business and operation of the City"); *Beamer v. Possum Valley Mun. Auth.*, No. 06-1982, 2010 U.S. Dist. LEXIS 28156, at *26-35 (M.D. Pa. Mar. 24, 2010) (granting summary judgment to employer finding employee exempt under administrative exemption where

"[d]espite the importance of his non-exempt duties, the Court finds that the record clearly shows Beamer's exempt duties were relatively more critical to the success of [employer].  Though testing and lab work were essential to [employer's] operations, . . . Beamer's personnel management and human resource responsibilities such as setting work schedules, training and evaluating employees, and handling  complaints were critical to [employer's] operations, even more so because the record reveals no other employees that handled these critical day-to-day functions at the [employer] facilities."); *Paul*, 2009 U.S. Dist. LEXIS 19277, at *28 (granting summary judgment to employer on administrative exemption finding "[e]ven assuming she spent a large percentage of her time performing data entry or other menial tasks, plaintiff does not dispute that she had primary responsibility to make key decisions with respect to [her underlying job duties].  Such responsibility falls within the functional areas . . . which the regulations specifically deem as having a direct relation to business operations."); *see also Demos v. City of Indianapolis*, 302 F.3d 698, 705 (7th Cir. 2002) (holding that time is not the sole criteria for whether an employee's duties are administrative; in those instances where an employee cites to time spent on a number of duties that seem clerical, courts must also examine "the relative importance of those duties to the employer" as "collateral tasks" do not count for much in the calculus); *Gagnon v. Res. Tech., Inc.*, 19 F. App'x 745, 746 (10th Cir. 2001) (affirming dismissal of plaintiff's FLSA claims, finding plaintiff office manager was exempt from overtime under the administrative exemption where her job duties consisted of, *inter alia*, supervising employee time slips and employment verification forms, payroll records, and purchase orders.  "She also attended and actively participated in senior staff meetings, . . . made recommendations on both hiring and firing."  "In addition, she performed some tasks also performed by the secretary/receptionist, such as answering telephones, as did other employees.").

19

**2.      In the Alternative, Plaintiff was an Exempt Executive Employee.**

The FLSA's regulations define, in relevant part, an "employee employed in a bona fide executive capacity" as any employee:

(1)      Compensated on a salary basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;

(2)      Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)      Who customarily and regularly directs the work of two or more other employees;[16] and

(4)      Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.[17]

29 C.F.R. § 541.100(a).  The concurrent performance of both exempt and non-exempt work does not disqualify an employee from the executive exemption if the requirements of Section 541.100 are otherwise met.  29 C.F.R. § 541.106(a).  The undisputed facts show that as the Practice's Office Manager, Plaintiff was an exempt executive employee.

**(a)      Primary Duty of Enterprise Management.**[18]

As set forth fully in Sections IV.B.1.(b-c), above, and incorporated herein by reference, Plaintiff admits she managed the day-to-day operations of the Practice.  Pl.'s Dep. 85:18-23, 277:15-278:23 (Ex. A).  As the Third Circuit noted in *Soehnle v. Hess Corp.*, 399 F. App'x 749, 751-52 (3d Cir. 2010), when it affirmed summary judgment to an employer:

---

[16] "The phrase 'two or more other employees' means two full-time employees or their equivalent."  29 C.F.R. § 541.104(a).

[17] "To determine whether an employee's suggestions and recommendations are given 'particular weight,' factors to be considered include, but are not limited to, whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon . . . .  An employee's suggestions and recommendations may still be deemed to have 'particular weight' even if . . . the employee does not have authority to make the ultimate decision."  29 C.F.R. § 541.105.

[18] Because the analysis as to whether an employee is paid on a salary basis is the same under both the administrative and executive exemptions, Mercy incorporates by reference herein its argument on this element as set forth in Section IV.B.1.(a), *supra*.

> We agree with the District Court's conclusion that plaintiff qualified as an exempt executive employee under this qualitative test.  Plaintiff was the sole manager of the Lancaster site and . . . she was  subject to minimal supervision but fully responsible for the supervision of several employees whom she hired, trained, and fired . . . . Though plaintiff spent a large amount of her time operating the cash register, a non-exempt activity, a qualitative assessment of her responsibilities demonstrates that her primary duty was management.  Thus, she was not entitled to overtime compensation under the FLSA.

*See also Simpson v. Prince Telecom, LLC*, No. 14-1211, 2017 U.S. Dist. LEXIS 48481, at *17-18 (D. Del. Mar. 31, 2017) (recommending the grant of summary judgment to employer, finding employee exempt under executive exemption where even though employee testified she "spent at least 85% of her work day performing non-exempt duties, . . . the record reflects that [her] most important duties as Project Manager were those involving management of technicians and day to day operations at Prince."), *adopted by*, 2017 U.S. Dist. LEXIS 61178 (D. Del. Apr. 21, 2017).

In the present case, by way of example, Plaintiff's managerial responsibilities included: (1) identifying training opportunities for the Practice's employees, procuring that training, and assigning, apportioning and monitoring their work, Pl.'s Dep. 142:13-144:19 (Ex. A); (2) setting employees' schedules, approving scheduling changes, timesheets, overtime requests, and approving all employees' vacation and leave usage, *id.* at 93:5-94:20, 99:6-20, 100:2-7; Bracket Dep. 130:18-132:3 (Ex. C); Frumento Decl. ¶ 19 (Ex. J); Frumento Dep. 56:1-57:1 (Ex. I); Dixon Decl. ¶ 19  (Ex. K); Dixon Dep. 200:20-203:24 (Ex. O); (3) managing day-to-day disciplinary matters involving Practice employees, Pl.'s Dep. 100:19-107:11 (Ex. A); Pries Dep. 195:23-196:13 (Ex. P); and (4) handling employee and patient complaints and grievances, Pl.'s Dep. 154:24-155:4 (Ex. A); Frumento Decl. ¶ 16 (Ex. J); Frumento Dep. 112:1-114:18 (Ex. I); Dixon Decl. ¶ 15 (Ex. K); Dixon Dep. 191:16-193:18 (Ex. O).  As such, like the employees in *Soehnle* and *Simpson*, Plaintiff's primary job duty was the management of the Practice.  29 C.F.R. § 541.700(c) ("Thus, for example, assistant managers in a retail establishment who

perform exempt executive work such as supervising and directing the work of other employees, ordering merchandise, managing the budget and authorizing payment of bills may have management as their primary duty even if the assistant managers spend more than 50 percent of the time performing nonexempt work such as running the cash register.").

**(b)      Directs the Work of Two or More Employees.**

Plaintiff customarily and regularly directed the work of two or more employees.  29 C.F.R. § 541.104(a); Pl.'s Dep. 70:22-71:7, 74:9-18 (Ex. A); Hilker Dep. 162:18-21 (Ex. G); Pzrepioski Dep. 13:17-20 (Ex. H).  Since Plaintiff was responsible for the overall day-to-day operations of the Practice, there is no doubt that Plaintiff supervised all non-physician employees working in the practice.  Pl.'s Dep. 82:8-12 (Ex. A); *see also Hudson v. Absecon Emergency Servs.*, No. 14-6419, 2016 U.S. Dist. LEXIS 129602, at *27 (D.N.J. Sep. 22, 2016) (granting summary judgment to employer on executive exemption finding the plaintiff supervised at least two full-time equivalent employees where the plaintiff admitted "he was in charge of '[o]verall operations of the squad.'").  The record evidence compels the conclusion that Plaintiff supervised all MAs who worked at the Practice.  *Id.*  Plaintiff explicitly admitted to supervising Mr. Dixon and Ms. Frumento.  *Id.*  While Plaintiff claims that she did not consider herself Ms. Pzrepioski's "supervisor," Pl.'s Dep. 75:22-24 (Ex. A), the record evidence demonstrates that on the two days per week that Ms. Pzrepioski worked in the Practice, Plaintiff supervised Ms. Pzrepioski as she performed the same MA role performed by Mr. Dixon and Ms. Frumento.  Hilker Dep. 162:18-21 (Ex. G); Pzrepioski Dep. 13:17-20 (Ex. H).[19]

"The phrase 'customarily and regularly' signifies a frequency which must be greater than occasional but which, of course, may be less than constant." 29 C.F.R. § 541.701.  "The phrase

---

[19] Plaintiff also supervised Ms. Freer while she was working at the Practice one day per week for approximately five hours per day.  Pl.'s Dep. 77:24-79:12, 283:15-284:11 (Ex. A); Brackett Dep. 130:8-10, 118:19-120:4 (Ex. C).

'two or more other employees' means two full-time employees or their equivalent."  29 C.F.R.

§ 541.104(a).  According to the DOL, "[i]f occasional, temporary or part-time employees are

involved when determining if the two fulltime employee equivalency is met, an exempt

executive must supervise two or more employees for a combined total of 80 hours of work by

such employees."  Wage & Hour Div., U.S. Dep't of Labor, Field Operations Handbook

22b02(b); *see also Diaz v. Team Oney, Inc.*, 291 F. App'x 947, 950 (11th Cir. 2008) (stating that

the DOL's "'80-hour rule' . . . provides that supervising two full-time employees is the

equivalent of 80 hours of direction of subordinate work per week"); *Secretary of Labor v.*

*Daylight Dairy Prods.*, 779 F.2d 784, 787 (1st Cir. 1985) (adopting 80-hour rule).

"[C]ourts have typically construed the regulation to require an individual to supervise two

or more full-time employees at least seventy-five to eighty percent of the time.'"  *Awan v.*

*Durrani*, No. 14-4562, 2015 U.S. Dist. LEXIS 86171, at *23-24 (E.D.N.Y. July 1, 2015)

(collecting cases) (citations omitted); *see also Diaz*, 291 F. App'x at 950 (affirming summary

judgment to employer on executive exemption where the evidence showed that "Diaz met or

exceeded 80 hours of supervisory work per week in at least 45 of the 52 applicable weeks (or

86%) – which is more than sufficient to show that Diaz customarily and regularly directed the

supervision of two or more employees"); *Ward v. Family Dollar Stores, Inc.*, 830 F. Supp. 2d

102, 112-13 (W.D.N.C. 2011) (granting summary judgment to employer on executive exemption

where "there were at least eighty work hours per week reported by hourly employees in the

stores where [plaintiff] was the assigned store manager for 81.58% of the relevant time period.");

*Goldman v. RadioShack Corp.*, No. 03-0032, 2006 U.S. Dist. LEXIS 2433, at *19 n.13 (E.D. Pa.

Jan. 23, 2006) (applying the 80-Hour Rule finding that "the class of [] store managers

["customarily and regularly"] supervised eighty subordinate hours 88 percent of the time.").

Applying this test to the instant case, Plaintiff was the Office Manager for 134 weeks (*i.e.*, from January 20, 2014 to August 17, 2016, the last date Plaintiff worked in the Practice). Mr. Dixon was a full-time MA in the Practice as of February 2, 2014.  Dixon Decl. ¶ 1 (Ex. K). Ms. Frumento was a part-time MA working 30 hours a week until her promotion to full-time in November 2014.  Frumento Dep. 16:1-18 (Ex. I).  Ms. Frumento regularly worked full-time hours beginning in November 2014, other than during the time that she was out on continuous FMLA from July 25, 2016 through the last date Plaintiff worked at the practice (August 17, 2016).  *Id.* at 94:6-9; Ms. Frumento's FMLA Leave Approval Letter (Ex. R).  Beginning in June 2014, Ms. Pzrepioski worked in the Practice for 16 hours per week until her termination in June 2016.  Pl.'s Dep. 49:8-12 (Ex. A); Brackett Dep. 86:2-12 (Ex. C); Pzrepioski Dep. 13:16-14:11 (Ex. H).  Therefore, for 112 weeks (*i.e.*, June 1, 2014 to July 24, 2016), Plaintiff supervised at least two full-time employees or their equivalent (*i.e.*, Mr. Dixon [40 hours], Ms. Frumento [30 hours, until November 2014 when she started working 40 hours], and Ms. Pzrepioski [16 hours]). Accordingly, Plaintiff supervised the equivalent of at least two full-time employees 83.58% (*i.e.*, 112 weeks divided by 134 weeks) of the time.  This 83.58% "is more than sufficient to show that [Plaintiff] customarily and regularly directed the supervision of two or more employees" while serving as the Practice's Office Manager.  *See Diaz*, 291 F. App'x at 950.  Therefore, Plaintiff meets the third part of the test for the executive exemption.[20]

> (c)     **Authority to Hire/Fire, or Whose Suggestions and Recommendations are Given Particular Weight.**

As set forth fully in Sections IV.B.1.(b-c), above, and incorporated herein by reference, Plaintiff had authority to recommend that employees be hired or fired, and management accorded

---

[20] Plaintiff supervised more than two full-time equivalent employees 100% of the time from the time that Ms. Pzrepioski began working at the Practice in June 2014 through the commencement of Ms. Frumento's FMLA leave (*i.e.*, from June 1, 2014 to July 24, 2016).  Accordingly, Mercy certainly is entitled to partial summary judgment under the executive exemption for that period of time.

Plaintiff's recommendations particular weight.  *See, e.g.*, Pl.'s Dep. 45:17-47:22, 49:4-50:11, 72:10-74:8, 77:24-78:15, 80:2-81:24, 90:3-5, 116:6-21 (Ex. A); Hilker Dep. 90:16-20, 104:19-105:1, 127:20-128:6 (Ex. G); Dixon Dep. 133:21-134:13 (Ex. O); Dixon Decl. ¶ 27 (Ex. K); Brackett Dep. 118:19-120:4 (Ex. C); Frumento Dep. 26:11-14, 29:3-34:11 (Ex. I); *see also McDowell*, 2005 U.S. Dist. LEXIS 29327, at *40-41 ("[W]hile not having the ultimate authority to interview and select employees, Plaintiff did play a part in the hiring process for both full and part-time personnel.").  Accordingly, because Plaintiff had the ability to make recommendations regarding hiring and firing of employees at the Practice, and these recommendations were given particular weight by Mercy, Plaintiff's position as Office Manager meets the requirements of the executive exemption.[21]

## V.   CONCLUSION

For the reasons set forth above, Mercy respectfully requests that this Court grant its Motion for Summary Judgment in its entirety.

---

[21] Here, Plaintiff satisfies the requirements of the executive and administrative exemptions.  However, in the event that the Court concludes that one element of the respective duties test is not met, the combination exemption still requires the grant of summary judgment as to Plaintiff's FLSA and PMWA claims.  Under the combination exemption, an employee who performs a combination of exempt duties—but who does not satisfy the primary duty requirement under any of the stand-alone exemptions—may nonetheless qualify for exempt status.  29 C.F.R. § 541.708.  "[A]n employee whose primary duty involves a combination of exempt administrative and exempt executive work may qualify for exemption so long as the other requirements, such as the salary basis test, are met."  *Id.*; *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 292-95 (4th Cir. 2007).  Applying this test to the instant case, Plaintiff's Office Manager role clearly meets the combination exemption because, at all times, Plaintiff's primary job duty was to oversee all administrative and management operations of the Practice.  *See, e.g.*, Pl.'s Dep. 147:16-20 (Ex. A).  As such, this primary job duty necessarily included the performance of duties that are exempt under both the administrative (*e.g.*, work in finance, accounting, quality control, purchasing, procurement, personnel management, human resources, employee benefits, and public relations) and executive (*e.g.*, employee training, discipline, hiring and firing as well as supervisory authority over the MAs working in the Practice) exemptions.

Respectfully submitted,

**POST & SCHELL, P.C.**

Dated:  <u>August 15, 2017</u>          By:     <u>*/s/ David E. Renner*          </u>
                                          A. James Johnston
                                          <u>ajohnston@postschell.com</u>
                                          David E. Renner
                                          <u>drenner@postschell.com</u>
                                          Four Penn Center
                                          1600 John F. Kennedy Blvd., 14th Floor
                                          Philadelphia, PA 19103
                                          Phone:  (215) 587-1000
                                          Facsimile:  (215) 587-1444

                                          *Counsel to Defendant*
                                          *Mercy Health System of*
                                          *Southeastern Pennsylvania*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed on this date a true and correct copy of the foregoing Motion for Summary Judgment and Brief in Support via the Court's ECF System and that the same have thereby been served upon the following counsel of record, electronically:

Julia W. Clark
Nicholas R. Romeu
Karpf, Karpf & Cerutti, PC
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
<u>jclark@karpf-law.com</u>
<u>nromeu@karpf-law.com</u>

*Counsel to Plaintiff*

**POST & SCHELL, P.C.**

Dated:  <u>August 15, 2017</u>          By:      *<u>/s/ David E. Renner</u>*
                                                          David E. Renner