IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICOLE KELLY-MYERS            :           CIVIL ACTION
                              :
     v.                       :
                              :
MERCY HEALTH SYSTEM OF        :           NO. 16-5194
SOUTHEASTERN PENNSYLVANIA     :

MEMORANDUM

Bartle, J.                                September 29, 2017

        Plaintiff Nicole Kelly-Myers has sued her former

employer, defendant Mercy Health System of Southeastern

Pennsylvania ("Mercy Health").  She alleges violations of the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq.,

Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat.

§ 333.104(c), and Pennsylvania Wage Payment Collection Law

("PWPCL"), 43 Pa. Cons. Stat. § 260.1.  The gravamen of her

complaint is the failure of Mercy Health to pay her overtime

wages after she was promoted to the position of Office Manager.

Before the court is the motion of Mercy Health for summary

judgment pursuant to Rule 56 of the Federal Rules of Civil

Procedure.

                              I.

        Under Rule 56 of the Federal Rules of Civil Procedure,

summary judgment is appropriate "if the movant shows that there

is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed R. Civ. P. 56(a);
see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A
dispute is genuine if the evidence is such that a reasonable
factfinder could return a verdict for the nonmoving party.
See  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).
Summary judgment is granted where there is insufficient record
evidence for a reasonable factfinder to find for the nonmovant.
See id. at 252.  We view the facts and draw all inferences in
favor of the nonmoving party.  See In re Flat Glass Antitrust
Litig., 385 F.3d 350, 357 (3d Cir. 2004).

II.

The following facts are not in dispute.  Kelly-Myers
began working full time for Mercy Health in January 2013 as a
Patient Service Representative ("PSR") in the physician practice
office ("the office") of Mercy Surgical Associates at Nazareth
Hospital.[1]  While Kelly-Myers was a PSR, there were two general
surgery physicians employed at the office: Dr. Charles Schafer
and Dr. Arthur Barnaby.  Dr. Schafer saw patients at the office
on Tuesdays and Dr. Barnaby saw patients at the office on
Wednesdays.  Although the office was open Monday through Friday

---

1. Mercy Health acquired Barnaby and Schafer Surgical
Associates in 2013.  Kelly-Myers had begun working in a customer
service position for Barnaby and Schafer Surgical Associates in
either 2007 or 2008.

for eight hours each day, Dr. Schafer and Dr. Barnaby generally only came into the office on days that they saw patients.

As a PSR, Kelly-Myers was paid an hourly wage of $18 per hour and was eligible to receive overtime wages.  Her duties included registering patients at check in, preparing patient charts, answering telephones, scheduling appointments, cleaning surgical instruments, and receiving referrals.  She reported to Lisa Brackett, who was the Office Manager of the office at that time.  Brackett was responsible for overseeing the day-to-day operations of the practice.

On January 20, 2014 Kelly-Myers was promoted to the full-time position of Officer Manager 1 ("Office Manager"), when Brackett was transferred to be the Office Manager of several different offices.  In her new position Kelly-Myers was paid an annual salary of $41,870 per year with a signing bonus of $4,000 to be paid in two installments.  She received an additional week of vacation than as a PSR.  She no longer received overtime pay.

While Kelly-Myers was in this position, two Medical Assistants also worked in the office: Jen Frumento and Barry Dixon.  These three, Kelly-Myers, Frumento, and Dixon, were, for the most part, the only three Mercy Health employees who worked in the office alongside Dr. Schafer and Dr. Barnaby.  Dr. Schafer and Dr. Barnaby, as noted above, were present in the office only on Tuesdays and Wednesdays, respectively.  At

-3-

different points during Kelly-Myers' tenure as Office Manager,
two other employees, Jackie Przepioski, a "floater" Medical
Assistant, and Kelly Freer, a nurse, also worked in the office.
As Office Manager, Kelly-Myers reported to Phyllis Hilker,
Regional Director of Practice Operations.  On occasion Brackett
stopped into the office to check on things and help Kelly-Myers
transition into the new position.  Kelly-Myers turned to
Brackett for help if needed and considered Brackett a "mentor."
After Kelly-Myers was promoted to Office Manager, Brackett no
longer had any responsibilities in the office.  In Kelly-Myers'
own words, "[e]verything did fall on me."

          As Office Manager, Kelly-Myers continued fulfilling
the duties she had fulfilled as a PSR.  She testified that these
duties would sometimes take up her entire day at work.  However,
she took on additional duties and had additional responsibility
as Office Manager, which she described as "being responsible for
the day-to-day operations of the practice."  She further
testified that she was "ultimately responsible for how the
office ran" and that she did whatever she "needed to do" to
ensure that it ran.

          Kelly-Myers was responsible for managing two employees
who reported directly and only to her: Medical Assistants
Frumento and Dixon.  Frumento originally worked part-time for
Mercy Health.  She was made a full-time employee at some time in

                              -4-

2014 after Frumento told Kelly-Myers that she would like to work full-time, and Kelly-Myers expressed to more senior management her support of Frumento's request.  Dixon, who had been employed at Barnaby and Schafer Surgical Associates prior to its acquisition by Mercy Health, was hired by Mercy Health in 2014. He was originally a part-time employee and then later in 2014 became a full-time employee.

Kelly-Myers was responsible for managing Frumento's and Dixon's schedules in a way that ensured that the office was adequately staffed on a daily basis.  Accordingly she approved or denied Frumento's and Dixon's requests for time off and coordinated with other Office Managers to find employees to staff her office, if necessary.  She had the authority to alter Frumento's and Dixon's regular working hours.  She was accountable for reviewing and verifying Dixon's and Frumento's timecards.  She also managed the schedules and other professional matters of the office's physicians, Dr. Schafer and Dr. Barnaby.

Kelly-Myers also had the authority to issue oral disciplinary warnings to employees at the practice.  On numerous occasions, she issued such warnings to Frumento as a result of Frumento's repeated tardiness.  Kelly-Myers had the prerogative to alter an employee's regular working hours and she did so. After orally disciplining Frumento, she changed Frumento's daily

-5-

scheduled working hours from 8:00 a.m. – 4:30 p.m. to 8:30 a.m. – 5:00 p.m.  Additionally, Kelly-Myers addressed matters in the workplace that affected the office environment.  For example, on multiple occasions Kelly-Myers observed an oral altercation between Dr. Schafer and nurse Freer, who only worked in the office on Tuesdays.  Kelly-Myers then spoke with Dr. Schafer about the incidents and reported the incidents to her supervisor, Phyllis Hilker.  Kelly-Myers requested that Freer no longer work on Tuesdays in the office.  At some point after this conversation with Hilker, Freer no longer worked in the office.

Kelly-Myers' duties included the resolution of disputes between employees, between employees and patients, and any patient complaints.  She had the authority to resolve such problems herself or refer the problem to a superior authority at Mercy Health.  If a patient asked to speak with a manager, Kelly-Myers spoke with the patient.

Kelly-Myers made various requests to Mercy Health management and her supervisor, Phyllis Hilker.  In 2015, after Kelly-Myers made repeated complaints to Hilker and to her former supervisor, Lisa Brackett, that the office was inadequately staffed, Mercy Health hired for the office a "floating" Medical Assistant, Jackie Przepioski.  Przepioski worked in the office on Tuesdays and Wednesdays and worked at other Mercy Health

offices on other days of the week.  Additionally, Kelly-Myers requested and received four new patient examination beds.

As part of her Office Manager duties, Kelly-Myers was responsible for staff development.  For example, she determined whether employees in the office needed additional training with respect to any of the office computer programs or any of the office procedures that involved interacting with patients.  She was obligated to ensure that the office employees understood and carried out current office procedures, such as procedures for scheduling patient appointments, standards of communications with patients, and the procedure for patient intake, among others.

Kelly-Myers was the only individual from her office who attended and participated in Mercy Health Office Manager meetings.  She was required to disseminate to the office any new, updated, or changed policies or procedures of Mercy Health that were discussed at the meetings, as well as to ensure that they were implemented and complied with at the office.  Also as part of Office Manager meetings, she became a member of the Mercy Health Surgical Patient Committee, which aimed to make recommendations on patient care and procedures in the Emergency Room.

Kelly-Myers monitored the staff in the office to make sure they were complying with and were up to date with all of

-7-

the relevant policies and procedures.  She had the duty to
remedy any situation in which she determined that the staff was
not in compliance.

Kelly-Myers had many other responsibilities as Office
Manager.  She reviewed daily bank deposits, reconciled the
deposits with collections, and resolved any issues relating to
billing difficulties.  She ordered office supplies.  She ensured
that the office stayed within the budget prescribed to it from
Mercy Health.

While Kelly-Myers had her own office within the
office, she spent most of her time at the front desk.  From her
position at the front desk, she spent a significant amount of
time interacting with patients.  She scheduled appointments,
took patients to examination rooms, took patient vitals, and
accepted insurance, among other things.  She handled patient
complaints.  According to Kelly-Myers, she was the "public face"
of the office.

Kelly-Myers was subject to little to no daily
supervision.  She had the ability to delegate responsibilities
to other employees in the office and, at times, she did so.  She
set her own schedule.

In sum, Kelly-Myers was solely responsible for the
smooth functioning of the office on a daily basis.  At all times
as Office Manager she remained responsible for managing the

practice, regardless of the amount of time she spent doing
Patient Service Representative duties.

Dr. Barnaby, who saw patients on Wednesdays, testified
that he observed no change in her daily work when Kelly-Myers
was promoted from PSR to Office Manager.  Notably, however, Dr.
Barnaby was only regularly in the office on Wednesdays, and
admitted that he did not know what went on in the office when he
was not there.  Dr. Barnaby described Kelly-Myers as "the person
we go to . . . who sort of organized the office itself" after
former employee Ilene Pastor was not offered a position by Mercy
Health after it acquired Barnaby and Schafer Surgical
Associates.  Barnaby admitted that "[t]he exact function of the
people that were in the office . . . I didn't know exactly what
people were doing."  He was unaware of what anyone —
Kelly-Myers, Dixon, Frumento — was required to do.  He
testified, "I don't know who was responsible for what."  He said
that there were many "behind the scenes type of things that get
done . . . to keep the practice going that I don't know exactly
what . . . Nicole [Kelly-Meyers] did and what [her replacement]
is doing."

Kelly-Myers' direct supervisor, Phyllis Hilker, who
was not present in the office on a daily basis, testified that
Kelly-Myers had the authority to create specific procedures for
her office that were within the guidelines of overall Mercy

-9-

Health policy.  Hilker maintained that she gave her managers,
including Kelly-Myers, "a lot of autonomy" with respect to
running their individual offices.

II.

We turn first to Kelly-Myers' FLSA claim.  Kelly-Myers
alleges that she was incorrectly classified by Mercy Health as
an "exempt" employee under the FLSA and as a result of this
misclassification, she did not receive overtime wages that she
was owed under the FLSA.  Mercy Health counters that Kelly-Myers
was properly classified as "exempt" under both the "bona fide
administrative capacity" exemption and the "bona fide executive
capacity" exemption of the FLSA so that it was not required to
pay Kelly-Myers overtime wages.

The FLSA requires employers to compensate certain
employees with overtime wages for all hours worked over forty
hours in one workweek.  The FLSA states, in relevant part:

> [N]o employer shall employ any of his
> employees who in any workweek is engaged in
> commerce or in the production of goods for
> commerce, or is employed in an enterprise
> engaged in commerce or in the production of
> goods for commerce, for a workweek longer
> than forty hours unless such employee
> receives compensation for his employment in
> excess of the hours above specified at a
> rate not less than one and one-half times
> the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

FLSA contains certain exemptions to this overtime pay requirement, including an exemption for employees working in a "bona fide . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  Under regulations promulgated by the Department of Labor, an "employee employed in a bona fide administrative capacity" is an employee:

> (1) Compensated on a salary . . . basis at a rate of not less than $455 per week . . . exclusive of board, lodging or other facilities;
>
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
>
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  "FLSA exemptions should be construed narrowly[.]"  Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).  "The burden of proving these exemptions is upon the employer[.]"  Martin v. Cooper Elec. Supply Co., 940 F.2d 896, 900 (3d Cir. 1991).

Kelly-Myers does not contest that her compensation arrangement meets the first prong of the bona fide administrative capacity exemption.  See 29 C.F.R. § 541.200(a)(1).  Nor does she challenge the application to her of the second prong of the exemption, namely that her "primary

duty is the performance of office or non-manual work directly related to the management or general business operations of the employer[.]" 29 C.F.R. § 541.200(a)(2). Kelly-Myers focuses only on the final prong of the exemption. She contends that Mercy Health has failed to meet its burden of establishing that that her "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a)(3).

The federal regulations that implemented the FLSA define "primary duty" as the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700(a). The regulations further provide that:

> Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty include, but are not limited to, the relative importance of the exempt duties as compared to other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

Id. In construing similar employment regulations, our Court of Appeals has held that as a "'general rule of thumb,' primary duty means a duty at which an employee spends the major part, or

over 50% of his or her time."  Reich v. Gateway Press, Inc.,
13 F.3d 685, 699 (3d Cir. 1994).

It is important to note that time, however, is only
one of the factors for consideration in this fact-intensive
inquiry.  29 C.F.R. § 541.700(b).  The federal regulations
specifically articulate that "nothing . . . requires that exempt
employees spend more than 50 percent of their time performing
exempt work.  Employees who do not spend more than 50 percent of
their time performing exempt duties may nonetheless meet the
primary duty requirement if the other factors support such a
conclusion."  Id.[2]  Our Court of Appeals has explained that "this
standard [of time] is flexible, depending on the importance of
the administrative duties conducted, the frequency of use of
discretionary power, the freedom from supervision, and
comparative wages."  O'Bryant v. City of Reading, 197 F. App'x
134, 136 (3d Cir. 2006); see also Guthrie v. Lady Jane
Colleries, 722 F.2d 1141, 1144 (3d Cir. 1983).

The record demonstrates without any genuine dispute
that Kelly-Myers' primary job duty was managing the office on a

---

2.  The regulations provide an illustrative example of an
assistant manager in a retail establishment who "may have
management as their primary duty" even if the assistant manager
spends "more than 50 percent of the time performing nonexempt
work such as running the cash register."  29 C.F.R.
§ 541.700(c).

daily basis.  In her own words, she was "responsible for the
day-to-day operations of the practice."

Under the third prong of the administrative capacity
exemption, Mercy Health must show that Kelly-Myers' primary duty
included the "exercise of discretion and independent judgment
with respect to matters of significance."  29 C.F.R.
§ 541.200(a)(3).  The exercise of discretion and independent
judgment involve "the comparison and the evaluation of possible
courses of conduct, and acting or making a decision after the
various possibilities have been considered."  29 C.F.R.
§ 541.202(a).  Matters of significance "refers to the level of
importance or consequence of the work performed."  <u>Id.</u>  The
regulations lay out a number of factors to consider when
determining whether an employee exercised discretion and
independent judgment.  <u>See</u> 29 C.F.R. § 541.202(b).  These
factors include, but are not limited to:

> [W]hether the employee has the authority to
> formulate, affect, interpret, or implement
> management policies or operating practices;
> whether the employee carries out major
> assignments in conducting the operations of
> the business; whether the employee performs
> work that affects business operations to a
> substantial degree, even if the employee's
> assignments are related to the operation of
> a particular segment of the business;
> whether the employee has the authority to
> commit the employer in matters that have
> significant financial impact; whether the
> employee has the authority to waive or
> deviate from established policies and

-14-

procedures without prior approval; whether
the employee has authority to negotiate and
bind the company on significant matters;
whether the employee provides consultation
or expert advice to management; whether the
employee is involved in planning long- or
short-term business objectives; whether the
employee investigates and resolves maters of
significance on behalf of management; and
whether the employee represents the company
in handling complaints, arbitrating disputes
or resolving grievances.

29 C.F.R. § 541.202(b).  The regulations provide that "employees

who meet at least two or three of [the factors in § 541.202(b)]

are exercising discretion and independent judgment, although a

case-by-case analysis is required."  69 Fed. Reg. 21, 122, 22,

143 (April 3, 2004).

The exercise of discretion and independent judgment

"implies that the employee has authority to make an independent

choice, free from immediate direction or supervision."

29 C.F.R. § 541.202(c).  The fact that an employee's decisions

or recommendations are subject to review at a higher level, or

revised or reversed, does not mean that an employee is not

exercising discretion and independent judgment.  Id.

Kelly-Myers' own testimony reveals that she exercised

discretion and independent judgment with respect to matters of

significance.  She evaluated each day whether her office was

adequately staffed and made decisions as a result of her

determination.  She was able to approve or deny an employee's

request for time off, as well as determine whether to coordinate
with other Office Managers to find coverage for her office.  She
also decided if and when orally to discipline employees for
their conduct.  She was solely responsible for disseminating and
implementing Mercy Health practices to employees in her office.
In addition, she determined whether employees in the office
needed additional training with respect to Mercy Health computer
programs, Mercy Health policies and procedures, or other
additional training.  If she determined additional training was
necessary, she ensured that employees received it.

        Kelly-Myers had the ability to deviate from certain
Mercy Health policies and procedures if she determined it was
appropriate to do so.  Kelly-Myers resolved disputes between
employees and handled patient grievances, as well as determined
whether these issues needed to be referred to more senior
management.

        In addition, Kelly-Myers made recommendations to her
superiors at Mercy Health.  These recommendations involved
Medical Assistant Frumento becoming a full-time employee;
ordering new patient examination beds; removing nurse Freer from
working at the office on Tuesdays; and hiring a "floater"
employee.

        In spite of all these responsibilities, Kelly-Myers
argues that her work really was "secretarial and clerical work"

-16-

and that it does not qualify as the "exercise of discretion and independent judgment" which is required for the administrative capacity exemption.  She also relies on 29 C.F.R. § 541.202(e), which states that "[t]he exercise of discretion and independent judgment also does not include clerical or secretarial work, recording or tabulating date, or performing other mechanical, repetitive, recurrent or routine work."  She testified in her deposition that she spent over fifty percent of her time doing secretarial and clerical work, such as filing paperwork and speaking with patients.

Kelly-Myers' testimony that she performed significant secretarial and clerical work does not remove her from the administrative capacity exemption.  Kelly-Myers ignores the "primary duty" aspect of the regulation.  29 C.F.R. § 541.200(a)(2-3).  That regulation includes within the administrative capacity exemption an employee whose primary duty is the performance of office work directly related to the general business management of the employer when this primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.  Id.  The record unequivocally demonstrates that Kelly-Myers' primary duties were directly related to the general business management of the office at Mercy Health.  See 29 C.F.R. § 541.200(a)(2). As she testified, she simply did whatever "needed to be done,"

-17-

which at times included secretarial and clerical work.
Regardless of the time she spent performing secretarial and
clerical work, her own testimony reveals that she was at all
times "ultimately responsible for how the office ran."  In sum
her primary duty was managing the office.  See 29 C.F.R.
§ 541.200(a)(2).  Her reliance on 29 C.F.R. § 541.202(e) is
misplaced.

        Kelly-Myers is an exempt employee as a matter of law.
She falls under the administrative capacity exemption of the
FLSA and the supporting regulations.  Thus we need not address
the "bona fide executive capacity" exemption under the FLSA.
Accordingly, we will grant summary judgment in favor of Mercy
Health and against Kelly-Myers with respect to this claim.

                                III.

        We now turn to Kelly-Myers' claim under the
Pennsylvania Minimum Wage Act ("PMWA"), the state statute which
parallels the FLSA.  Pennsylvania courts have looked to the
federal statute for guidance in applying the PMWA.  Baum v.
AstraZeneca LP, 372 F. App'x 246, 248 n.4 (3d Cir. 2010).  They
have held that the PMWA substantially parallels the FLSA and
thus "deference is properly given to federal interpretation."
Levitt v. Tech. Educ. Servs., Inc., 2012 WL 3205490 at *3 (E.D.
Pa. Aug. 7, 2012) (citing Commonwealth v. Stuber, 822 A.2d 870,
873 (Pa. Cmwlth. 2003)).  The PMWA is to be interpreted in the

                               -18-

same fashion as the FLSA.  See Levitt, 2012 WL 3205490 at *3;

see also Pieretti v. Dent Enterprises, 2013 WL 754436 at *7

(E.D. Pa. Feb. 27, 2013).

> The PMWA provides, in relevant part:
>
> Employes shall be paid for overtime not less
> than one and one-half times the employe's
> regular rate as prescribed in regulations
> promulgated by the secretary . . . the
> secretary shall promulgate regulations with
> respect to overtime subject to the
> limitations that no pay for overtime in
> addition to the regular rate shall be
> required except for hours in excess of forty
> hours in a workweek.

43 Pa. Const. Stat. § 333.104(c).  The PMWA, like the FLSA,

contains an exemption to the overtime pay requirement for

employees in a bona fide administrative capacity.  It provides

that "Employment in the following classifications shall be

exempt from . . . the overtime provisions of this act: . . .

[i]n a bona fide executive, administrative, or professional

capacity[.]"   43 Pa. Const. Stat. § 333.105(a)(5).[3]  While the

---

3. The regulations of the Pennsylvania Department of Labor
Industry, which implement the PMWA, define, in relevant part,
"employment in a bona fide administrative capacity" as work by
an individual:

> (1) Whose primary duty consists of the
> performance of office or nonmanual work
> directly related to management policies or
> general operation of his employer or the
> customers of the employer.
>
> (2) Who customarily and regularly exercises
> discretion and independent judgment.

criteria for the administrative capacity exemption under the PMWA is not identical to criteria under the FLSA, courts have found that the tests for determining whether an employee falls within an exemption of the statutes are substantially similar. Vanstory-Frazer v. CCHS Hosp. Co., 2010 WL 22770 at *9 (E.D. Pa. Jan. 4, 2010).

In a footnote Kelly-Myers argues that the PMWA explicitly contains a quantitative element that the FLSA does

---

(3) Who regularly and directly assists an employer or an employee employed in a bona fide . . . administrative capacity, who performs under only general supervision work along specialized or technical lines requiring special training, experience or knowledge, or who executes under only general supervision special assignments or tasks.

(4) Who does not devote more than 20% of time worked in a workweek . . . to activities which are not directly and closely related to the performance of the work described in paragraphs (1)- -(3).

(5) Who is paid for his services a salary of not less than $155 per week . . . provided that an employee who is compensated on a salary or fee basis at a rate of not less than $250 per week . . . and whose primary duty consists of the performance of work described in paragraph (1), which includes work requiring the exercise of discretion and independent judgment, shall be deemed to meet all of the requirements of this section.

34 Pa. Code § 231.83.

not contain.  She points to § 231.83(4) of the PMWA regulations, which provides that an employee who devotes more than twenty percent of her time to those activities that are not "administrative" under § 333.105(a)(5) of the statute is not an exempt employee under the PMWA.  <u>See</u> 43 Pa. Const. Stat. § 333.105(a)(5); <u>see</u> <u>also</u> 34 Pa. Code § 231.83(4).  Specifically Kelly-Myers testified that she spent more than twenty percent of her time performing Patient Service Representative clerical tasks, such as answering the phones.  She contends therefore that she does not fall within the PMWA administrative capacity exemption.  She further maintains that Dr. Barnaby was not able to identify her daily responsibilities or changes in her daily work after becoming Office Manager and that Hilker, her direct supervisor, was unable to describe ways in which Kelly-Myers exercised independent judgment.

This argument misconstrues the regulations that implement the administrative capacity exemption of the statute. The regulation states, in relevant part, that work by an individual in an administrative capacity is work by an individual "who does not devote more than 20% of time worked in a workweek . . . to activities which are not directly and closely related to the performance of the work described in paragraphs (1)- -(3)."  34 Pa. Code § 231.83(4).  Kelly-Myers testified that she was "ultimately responsible for how the

office ran." She also testified that clerical tasks, such as answering the phones, were all tasks that "needed to be done" in order to maintain the smooth operation of the office. At all times she was responsible for ensuring that the office functioned. Kelly-Myers' performance of clerical tasks were "directly and closely related to the performance" of her work as managing the office on a daily basis. See 34 Pa. Code § 231.83(1). The reference to the 20% in § 231.83(4) of the regulations is therefore inapplicable. She is an exempt employee as a matter of law.

Accordingly, we will grant Mercy Health's motion for summary judgment with respect to Kelly-Myers' claim under the PMWA.

IV.

Finally there is the claim of Kelly-Myers under the Pennsylvania Wage Payment Collection Law ("PWPCL"), 43 Pa. Const. Stat. § 260.3. The statute provides, in relevant part:

> Every employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advanced by the employer. . . . All wages, other than fringe benefits and wage supplements, earned in any pay period shall be due and payable within the number of days after the expiration of said pay period as provided in a written contract of employment[.]

43 Pa. Const. Stat. § 260.3(a).  The term "wages" includes "all earnings of an employe, regardless of whether determined on time, task, piece, commission or other method of calculation," and "any other amount to be paid pursuant to an agreement to the employe[.]"  43 Pa. Const. Stat. § 260.2a.

       Mercy Health argues that Kelly-Myers was not entitled to overtime wages because there was no agreement between Mercy Health and Kelly-Myers that provided she would receive overtime wages.  Kelly-Myers does not dispute this argument, nor does she address in any way Mercy Health's motion for summary judgment with respect to her PWPCL claim.  Kelly-Myers testified that after she was promoted to Office Manager, she knew that she was not eligible to be paid overtime wages in addition to her salary.  She also testified that there was no separate agreement that she would receive overtime wages in addition to her salary. The PWPCL "does not create an independent, substantive right to compensation," but rather it "serves as an enforcement mechanism for employees whose employers have breached a contractual obligation to pay them wages." Pieretti, 2013 WL 754436 at *4. In the absence of a contractual right to overtime wages, the WPCL does not afford Kelly-Myers a claim against Mercy Health.

       Accordingly, the motion of Mercy Health for summary judgment on Kelly-Myers' PWPCL claim will be granted.

-23-